<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAVID SCHRAEDER, et al., | : Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs, | : Civil Case No. 12-6074 (FSH) |
| v. | : **OPINION & ORDER** |
| DEMILEC (USA) LLC, et al., | : Date: July 12 , 2013 |
| Defendants. |  |

**<u>HOCHBERG, District Judge</u>:**

      This matter comes before the Court upon Defendant Demilec (USA) LLC's Motions to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), and Plaintiffs' Cross-Motion to Amend the complaint.  The Court has reviewed the parties' submissions pursuant to Federal Rule of Civil Procedure 78.

**I.    BACKGROUND[1]**

      Plaintiffs David and Lauren Schraeder filed a class action complaint on behalf of themselves and similarly situated owners and residents of real property containing defective spray polyurethane foam insulation ("SPF") manufactured by Demilec (USA) LLC ("Demilec"). The class representatives are pursuing a class action against Demilec and the

---

[1] The alleged facts have been taken from Plaintiffs' Amended Class Action Complaint ("Amended Complaint"), [ECF No. 16]. For the purposes of these motions to dismiss, the Court will accept the factual allegations in the Amended Complaint as true and construe all facts in Plaintiffs' favor.

distributors/installers Energy Improvement Group, LLC, and Energy Improvement Group, LLC d/b/a Foam People.

The SPF products at issue become polyurethane semi-rigid foam by a chemical reaction of two sets of toxic compounds[2] brought together in a spraying apparatus handled by an installer who applies the material into clients' homes to provide insulation. Demilec trains its installers on proper installation techniques of SPF. As alleged in the Amended Complaint, the chemical process requires strict control and monitoring even in industrial conditions to avoid toxic dangers to workers and environmental exposure or release. The resulting polyurethane foam is supposed to become inert and non-toxic when applied. Plaintiffs allege, however, that Demilec's SPF remains toxic after installation because of faulty design or because proper installation is nearly impossible due to the exacting set of installation requirements, inadequate training, and installer certification methods. (Am Comp. ¶ 11.) They allege that the resulting faulty SPF can continue to emit toxic fumes that cause respiratory issues, neurological problems, and skin and eye irritation.

Plaintiffs also allege that they relied on specific statements Defendants made in conjunction with the marketing and advertising of Demilec's SPF products which stated, for example, that Demilec's SPF is green and non-toxic, and that users would be healthier after installing Demilec's SPF because the SPF creates a seal to insure that indoor air quality is healthier and cleaner than outside air. (*See, e.g.*, Am. Comp. ¶¶ 16, 17, 18.) According to Plaintiffs, due to the defective nature of Demilec's design and manufacture of SPF, the defective

---

[2] According to Plaintiffs' Amended Complaint, Demilec's SPF contains diphenylmethane diisocyanate (MDI), which is classified as hazardous by OSHA and can cause respiratory injuries and irritation to skin and eyes; other chemical compounds of SPF are not disclosed because of trade secrets, but Demilec's product sheet lists them as classified by OSHA as hazardous and causes of health issues. (Am. Comp. 19-20.)

nature of Demilec's training of distributors/installers, and the defective nature of Demilec's warnings, labeling, and training materials, Plaintiffs and their properties have been exposed to Demilec's problematic SPF and the harmful effects of the gases it emits after installation. The only remedy is completely removing the SPF. (Am. Comp. ¶¶ 13, 25.) As a result, Plaintiffs claim that they have suffered and continue to suffer economic harm and/or personal injury. (Am. Comp. ¶¶ 30-32.)

The Amended Complaint sets forth causes of action for: (1) breach of express warranty; (2) unjust enrichment; (3) violation of the New Jersey Consumer Fraud Act ("CFA") and other consumer protection acts; (4) defective design under the New Jersey Product Liability Act ("PLA"); (5) manufacturing defect under the PLA; (6) failure to warn under the PLA; and (7) injunctive and equitable relief, including but not limited to medical monitoring. Defendant Demilec has moved to dismiss Counts I, II, III, and VII pursuant to Fed. R. Civ. P. 12(b)(6), and the entire complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. In response to Demilec's 12(b)(1) motion, Plaintiffs filed a cross-motion to amend their complaint.

## II. LEGAL STANDARDS

### A. Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

A case may be dismissed for "lack of subject-matter jurisdiction" under Fed. R. Civ. P. 12(b)(1). Challenges to jurisdiction under Rule 12(b)(1) may be either facial or factual. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). A facial attack challenges the sufficiency of the pleadings, and the trial court "must consider the allegations in the complaint as true." *Id.* With a factual attack, plaintiff's allegations are afforded no presumption of truthfulness and the trial court may review evidence outside the pleadings. *Id.*; *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

**B. Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a case may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

**III.   DISCUSSION**

**A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

Plaintiffs invoke diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711, to assert the Court's subject matter jurisdiction over this matter. Demilec contends that in their Amended Complaint, Plaintiffs fail to sufficiently allege diversity jurisdiction because they fail to allege the citizenship of any members of Demilec, a limited liability company.

In response to Demilec's motion, Plaintiffs filed a cross-motion to amend their Amended Complaint in order to remedy this alleged defect and plead the citizenship of Demilec's members.[3] Demilec opposes Plaintiffs' cross-motion, arguing that it is a delay tactic and that amendment would be futile given two exceptions to jurisdiction under CAFA. 28 U.S.C. § 1332(d)(3) provides that a district court may decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed, based on a consideration of a variety of factors. 28 U.S.C. § 1332(d)(4) provides when a district court shall decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(2), and is applicable to class actions where, depending on the subpart, greater than two-thirds or two-thirds or more of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed.

---

[3] Because Plaintiffs have moved to amend their complaint to add the citizenship of Demilec's members, the Court does not reach the issue of whether stating the membership of LLCs is necessary to establish diversity jurisdiction under CAFA. *See Coleman v. Chase Home Finance, LLC*, No. 08-2215, 2009 WL 1323598, at *2 (D.N.J. May 11, 2009) (holding that Section 1332(d)(10) applies to LLCs and thus for purposes of diversity jurisdiction under CAFA, an LLC is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized); *but see Zambelli Fireworks Manufacturing Company v. Wood,* 592 F.3d 412, 420 (3d Cir. 2010) (holding that the citizenship of a limited liability company is determined by the citizenship of its members).

Fed. R. Civ. P. 15 permits amending pleadings "when justice so requires." As the Third Circuit has explained, an amendment should be allowed under Rule 15(a) unless "denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Lundy v. Adamar of New Jersey*, 34 F.3d 1173, 1196 (3d Cir. 1994) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652-653 (3d Cir. 1989)).

The exceptions to amendment do not apply here. Plaintiffs' request to amend came in response to Demilec's motion to dismiss and there is no showing of bad faith or unexplained delay.[4] Furthermore, Plaintiffs' amendment would not be futile. In their cross-motion to amend their complaint, Plaintiffs have indicated that Demilec's members are citizens of Texas, which would satisfy the minimal diversity of citizenship required under 28 U.S.C. § 1332(d) for class actions because Plaintiffs are New Jersey citizens.[5] [ECF No. 42-2, at p. 2.] Plaintiffs also assert that the jurisdictional exceptions provided in 28 U.S.C. § 1332(d)(3) and (d)(4) do not apply in this case because one of the proposed classes is a national class that will consist of less than one-third New Jersey citizens. To support the contention that New Jersey citizens make up a small percentage of the nationwide class, Plaintiffs cite to SPF production data to show it is widely sold throughout the United States, and to Demilec's website to show that Demilec's combined territory encompasses all fifty states and thus it has a national sales presence. On the face of the complaint, Plaintiffs have asserted a nationwide class in addition to the New Jersey subclasses,

---

[4] In its submissions to the court requesting to file an amended complaint, Plaintiffs indicate that Demilec refused their request for consent to file a Second Amended Complaint to add the citizenship of the LLC members. [ECF No. 42, at p. 3] Their cross-motion to amend is a response to Demilec's motion in order to cure alleged defects in the complaint.

[5] In accordance with 28 U.S.C. § 1332(d)(2), Plaintiffs have also pled facts sufficient to show that the matter in controversy exceeds the sum or value of $5,000,000 given the alleged harms to a proposed nationwide class.

and there is no indication that even one third of all proposed plaintiff classes in the aggregate are citizens of New Jersey.[6] Therefore, amendment of the complaint would not be futile and is allowed.

However, because there appear to be multiple potentially duplicative lawsuits around the country seeking relief from Defendant Demilec, in an effort to conserve judicial resources, the parties shall jointly provide to the Court a list of all pending related cases against Defendant Demilec asserting a nationwide class relating to its spray polyurethane insulation, and the status of each case. The deadline for the parties to submit motions for class certification as outlined in the Scheduling Order dated June 5, 2013 is hereby adjourned with no new date pending the Court's review of the parties' joint submission. All other dates and deadlines within the June 5, 2013 Scheduling Order shall remain unchanged.

### B. Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1. New Jersey Consumer Fraud Act Claim and Unjust Enrichment Claim

Demilec argues that Plaintiffs' CFA claim should be dismissed because the PLA subsumes CFA claims whose "essence" sounds in products liability. The New Jersey Supreme Court discussed at length the scope of the PLA in *In re Lead Paint Litig.*, 191 N.J. 405, 436 (2007), and courts have subsequently drawn upon the *Lead Paint* decision to hold that "by enacting the PLA, the New Jersey Legislature manifested its intent to replace all pre-existing claims by 'one unified, statutorily defined theory of recovery for harm caused by a product.'" *McDarby v. Merk & Co., Inc.*, 401 N.J.Super. 10, 96 (2008) (quoting *Lead Paint*, 191 N.J. at

---

[6] The party objecting to the exercise of federal jurisdiction bears the burden of establishing that an exception to CAFA applies. *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153-54 (3d Cir. 2009). Demilec has not met this burden at this juncture. However, this holding does not preclude the Court from revisiting the issue of subject matter jurisdiction, particularly if the class definitions change in the future, whether before or upon class certification.

436). In *Lead Paint*, the court acknowledged the Legislature's "expansive and inclusive" definition of a "product liability action", which includes "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3); *Lead Paint*, 191 N.J. at 436. It characterized this language as "encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *Id.* at 436-37. The court then undertook a "careful reading" of plaintiffs' complaint finding that "[t]he central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead…and failed to warn of those dangers" and that this failure to warn was "squarely within the theories included in the PLA." *Id.* at 437. The court in *McDarby* expanded this analysis to CFA claims, finding "no basis, in legislative history, statutory language or Court decisions, to conclude that plaintiffs can maintain separate causes of action under the PLA and the CFA in this case." *Id.*

Plaintiffs contend that because they base their CFA claim on fraudulent misrepresentations made by Demilec and not on the harm done to them by Demilec's products, their products liability claim does not subsume their CFA claim. Plaintiffs rely on *New Hope Pipe Liners, LLC v. Composites One, LLC*, in which the court held that "representation-based" claims that are based on "affirmative representations as to the suitability of the [product]" are not subsumed by the PLA. No. 09-3222, 2009 WL 4282644, *1 (D.N.J. Nov. 30, 2009).[7]

---

[7] In *New Hope Pipe Liners*, plaintiff's fraud claim arose out of a rise in the price of the product it had been buying from defendants for several years. 2009 WL 4282644, at *1. Because of the price increase, defendants told plaintiff that it could supply a substitute product at the price of the original product before the price increase and that this substitute would perform just as well as the original product. *Id.* However, the product did not function well and plaintiff was forced to repair or replace the product. *Id.* The court held that the PLA did not subsume this representation-based CFA claim because "representation-based claims and products liability claims deal with two distinct categories of unlawful conduct rather than two different theories covering the same underlying conduct." *Id.*

However, while the Plaintiffs here allege that Demilec promoted the SPF as "green" and non-toxic, the essence of Plaintiffs' real claim, unlike that in *New Hope Pipe Liners*, sounds in products liability; it asserts that Demilec failed to warn of the potential health issues that could occur if their product was not mixed correctly, which resulted in harm from the product. Therefore Plaintiffs' CFA claim is subsumed by the PLA and thus dismissed. Indeed, the New Jersey Supreme Court held in *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66 (2008), that the "language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product" and held that the PLA subsumed plaintiffs' CFA claim because "the heart of plaintiffs' case is the potential for harm caused by [defendants'] drug." *Id.* at 66. *See also Baily v. Wyeth, Inc.*, 424 N.J. Super. 278, 331-33 (2008) (aff'd *DeBoard v. Wyeth, Inc.*, 422 N.J. Super. 360 (App. Div. 2011)) (holding that a CFA claim based on defendants allegedly misleading statements about the safety of their pharmaceutical products, which allegedly led directly to plaintiffs' purchase of the products, was subsumed by the PLA because despite defendants' alleged affirmative representations about the safety of the drugs, "the essential nature of [plaintiffs'] claims is that [defendants] failed to warn of the dangers of their drugs" which resulted in harm caused by the product).

Similarly, Plaintiffs' unjust enrichment claim is nothing more than conclusory legal language used to dress up a claim that, in reality, sounds in product liability. It, too, is subsumed by the PLA and thus dismissed. While Plaintiffs argue that Fed. R. Civ. P. 8(d) allows for a plaintiff to plead alternative theories of recovery, as explained above, the PLA provides the sole source of remedy for Plaintiffs' product liability claims. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011); *Sinclair*, 195 N.J. at 54 (upholding dismissal of plaintiffs'

CFA claims concluding that "the PLA is the sole source of remedy for plaintiffs' defective product claim; therefore, the Consumer Fraud Act … does not provide an alternative remedy.").

### 2. Breach of Express Warranty Claim

Demilec argues that Plaintiffs' express warranty claim should be dismissed because they fail to sufficiently identify the source of the warranty, and, consequently, have failed to set forth the factual basis needed to state a cognizable claim.

> New Jersey law carves out three ways to create an express warranty:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. § 12A:2-313. Courts dismiss claims for breach of an express warranty where plaintiffs fail to specify any factual support as to the specific language or source of the alleged warranty. *Compare Simmons v. Stryker Corp.*, CIV. A. 08-3451 JAP, 2008 WL 4936982, at *2 (D.N.J. 2008) (dismissing plaintiff's express warranty claim because plaintiff "alleged no facts to suggest that an express warranty existed"); *with Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 722 (D.N.J. 2011) (denying defendants' motion to dismiss where plaintiffs' complaint contained specific statements from defendants' website that formed the basis of the bargain). Here, Plaintiffs' reference in the Amended Complaint to Demilec's "advertising and marketing brochures" is general; however, when read in connection with the many alleged statements by Demilec, the claim puts forth enough factual information to survive a motion to dismiss. Specifically, Plaintiffs allege that Demilec stated in its brochures that SPF products create an "airtight seal" that ensures that "indoor air quality is healthier and cleaner than outside air", that

users will be "healthier" after installing SPF products, that "no toxins are emitted during preparation and installation" of the SPF, that SPF "maintains peak performance," and that the product is "green", non-toxic and safe. Because the Amended Complaint provides the specific language and source of the alleged warranty, this claim will not be dismissed.

### 3. Injunctive Relief and Medical Monitoring

In Count VII of the Amended Complaint, Plaintiffs assert a claim for injunctive relief and medical monitoring. Demilec argues that Plaintiffs fail to state a claim in this count. The Court will not address the merits of the remedies Plaintiffs seek, because at this stage in the litigation, before a substantial factual record has been developed, it would be premature to determine what remedies are appropriate. However, it is clear from the Amended Complaint that Plaintiffs are seeking injunctive relief and medical monitoring as remedies for their claims, and because remedies are not causes of actions by themselves but instead accompany causes of action, Count VII is dismissed. Plaintiffs do retain the right to seek such equitable remedies that may be applicable to their claims, but such remedies must be properly pled as part of the relief, and not as a separate cause of action.

## IV.   CONCLUSION & ORDER

For the reasons set forth above,

**IT IS** on this 12th day of July, 2013,

**ORDERED** that Plaintiffs' Cross-Motion to Amend the Complaint is **GRANTED** and Defendant Demilec's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED** as moot; and it is further

**ORDERED** that Defendant Demilec's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED IN PART** as to Plaintiffs' New Jersey Consumer Fraud Act claim, unjust enrichment claim, and claim for injunctive relief and medical monitoring;[8] and it is further

**ORDERED** Demilec's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED IN PART** with regard to Plaintiffs' breach of express warranty claim; and it is further

**ORDERED** that Plaintiffs shall file the Second Amended Complaint on the grounds permitted in this Opinion within 20 days of the date of this Order; and it is further

**ORDERED** that the parties shall jointly submit within 14 days of the date of this Order a list of all pending product liability actions in any jurisdiction asserting a nationwide class against Defendant Demilec relating to its spray polyurethane insulation, and the status of each case. The deadline for class certification motions as outlined in the June 5, 2013 Scheduling Order is adjourned with no new date pending the Court's review of the parties' joint submission.

        **/s/ Faith S. Hochberg**
        Hon. Faith S. Hochberg, U.S.D.J.

---

[8] These remedies may be included in Plaintiffs' Second Amended Complaint as part of the relief sought where appropriate.