**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**
CASE NO.: 2:12-cv-06074-FSH-MAH

DAVID SCHRAEDER and
LAUREN SCHRAEDER,
Individually, and on behalf of all others
similarly situated,

Plaintiffs,

v.

DEMILEC (USA) LLC, a Texas Corporation;
ENERGY IMPROVEMENT GROUP, LLC, a
New Jersey Corporation; and ENERGY
IMPROVEMENT GROUP, d/b/a FOAM PEOPLE,
a New Jersey Corporation

Defendants.

_______________________________________/

---

# PLAINTIFFS' OPPOSITION TO DEFENDANT DEMILEC'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

**Motion Date: 10/21/13**
**Opposition Due Date: 10/7/13**

David T. Sirotkin
MORELLI ALTERS RATNER PC
Attorneys for Plaintiffs
950 Third Avenue, 11th Floor
New York, NY 10022
(212) 751-9800 – Telephone
(212) 751-0046 – Facsimile

# TABLE OF CONTENTS

Preliminary Statement..........................................................................1

I. Legal Standard Under Fed. R. Civ.P.12(c)............................................1

II. Plaintiffs are Not Required to Plead that a Reasonably Feasible Alternative Design Exists in Order to Properly Plead A Claim For Defective Design Under the New Jersey Products Liability Act.............................................3

III. Plaintiffs Have Sufficiently Pleaded Facts To Articulate a Cause Of Action for Defective Design Under the New Jersey Products Liability Act..................5

IV. The Nelson Case Defendant Relies on is Distinguishable.........................8

V. Should the Court Grant Defendant Demilec's Motion, Plaintiffs Request Leave to Amend Their Complaint to Plead a Reasonably Feasible Alternative Design...........................................................................................8

Conclusion..................................................................................11

# TABLE OF AUTHORITIES

**Cases:**

Acorda Therapeutics, Inc. v. Apotex Corp., CIV. A. 07-4937JAG, 2008 WL 5423937 (D.N.J. Dec. 29, 2008)....2

Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388 (3d. Cir. 2012)....2

Ashcroft v. Iqbal, 556 U.S. 662 (2009)....2

Bechtel v. Robinson, 866 F.2d 644 (3d Cir. 1989)....10

Borse v. Piece Goods Shop, Inc., 963 F.2d 611 (3d Cir. 1992)....9

Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Surety Co., 177 F.3d 210 (3d Cir. 1999)....9

Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of V.I., Inc., 663 F.2d 419 (3d Cir. 1981)....10

Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc., 617 F.3d 207 (3d. Cir. 2010)....3

Johansen v. Makita U.S.A., 128 N.J. 86 (1992)....4

Johnson v. New York, 315 Fed. Appx. 394 (3d. Cir. 2009)....9

Kiser v. General Electric Corp., 831 F.2d 423 (3d Cir. 1987)....9

Lewis v. Am. Cyanamid Co., 155 N.J. 544 (1998)....5

Lundy v. Adamar of New Jersey, 34 F.3d 1173 (3d Cir. 1994)....10

Nelson v. Biogen Idec Inc., CIV.A. 12-7317, 2013 WL 1700918 (D.N.J. Apr. 19, 2013)....8

Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding, 245 Fed. Appx. 161 (3d Cir. 2011)....9

Torres v. Lucca's Bakery, 487 F. Supp. 2d 507 (D.N.J. 2007)....................3

Turchan v. Nissan Motor Corp. in U.S.A., 316 N.J. Super. 554 (App. Div. 1998)....................4

**Statutes**

Fed. R. Civ. P. 12(c)....................1

Fed. R. Civ. P. 12(b)....................2

Fed. R. Civ. P. 15(a)....................8

N.J. Stat. Ann. § 2A:58C-2....................3

## Preliminary Statement

Plaintiffs commenced this class action on behalf of themselves and all other similarly situated owners and residents of real property who have purchased and installed on their property a defective Demilec spray foam insulation product. After having its Motion to Dismiss granted in part and denied in part[1], Demilec now moves for judgment on the pleadings pursuant to Fed. R. Civ. P 12 (c) and improperly seeks to dismiss Plaintiffs' design defect claim under the New Jersey Products Liability Act (PLA). However, Plaintiffs have sufficiently pled a design defect cause of action. Additionally, Demilec mistakenly relies on a case that is readily distinguishable from the case at bar. Accordingly, as explained fully below, Defendant Demilec's Motion for Judgment on the Pleadings must be denied. Alternatively, if the Court grants Demilec's Motion, Plaintiffs respectfully request leave of the Court to amend their Complaint to plead a reasonably feasible alternative design for SPF.

## Argument

### A. Legal Standard Under Fed. R. Civ. P. 12(c)

A court will grant a motion for judgment on the pleadings if the movant establishes that there are no issues of material fact and that he is entitled to

---

[1] In its Motion, Demilec inaccurately describes its Motion to Dismiss as having been granted. (Def. Mot. pp 4)

judgment as a matter of law. Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388, 390 (3d. Cir. 2012). In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party. Id. The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), is the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Acorda Therapeutics, Inc. v. Apotex Corp., CIV. A. 07-4937JAG, 2008 WL 5423937 (D.N.J. Dec. 29, 2008) (*citing* Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) (emphasis added). Indeed, Twombly "does not impose a *probability* requirement at the pleading stage," but instead simply calls for pleading "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations. See Twombly, 550 U.S. at 556 (emphasis added). Thus, "when a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one" because "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." Twombly, 550 U.S. at 583 (*quoting* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**B. Plaintiffs are Not Required to Plead that a Reasonably Feasible Alternative Design Exists in Order to Properly Plead A Claim For Defective Design Under the New Jersey Products Liability Act**

Under the PLA, "a manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: . . . was designed in a defective manner." N.J. Stat. Ann. § 2A:58C-2. To succeed under a strict liability design defect theory in New Jersey, "a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user." Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc., 617 F.3d 207, 225 (3d. Cir. 2010) (*quoting* Jurado v. W. Gear Works, 131 N.J. 375, 619 A.2d 1312, 1317 (N.J. 1993)). In cases involving a design defect, "plaintiff must show specifically that the product 'is not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes.'" Id.

In a design defect case, New Jersey courts employ a "risk-utility analysis" to determine whether a product is not reasonably safe. Torres v. Lucca's Bakery, 487 F. Supp. 2d 507, 519 (D.N.J. 2007) (*citing* Lewis v.

American Cyanamid Co., 155 N.J. 544, 568, 715 A.2d 967 (1998); Johansen v. Makita U.S.A., 128 N.J. 86, 95, 607 A.2d 637 (1992). The seven factors of the "risk-utility analysis" set forth by the New Jersey Supreme Court include:

> 1. The usefulness and desirability of the product—its utility to the user and to the public as a whole.
>
> 2. The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.
>
> 3. The availability of a substitute product [that] would meet the need and not be as unsafe.
>
> 4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
>
> 5. The user's ability to avoid danger by the exercise of care in the use of the product.
>
> 6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.
>
> 7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

Turchan v. Nissan Motor Corp. in U.S.A., 316 N.J. Super. 554,563, 720 A.2d 981 (App. Div. 1998) (*quoting* O'Brien v. Muskin Corp., 94 N.J. 169, 182, 463 A.2d 298 (1983)). An evaluation of these factors "may justify a conclusion that even though no alternative design existed which would have made a product safer, the

product is 'so dangerous and of such little use that under the risk-utility analysis [the] manufacturer [should] bear the cost of liability to others.'" Turchan, 316 N.J. Super at 563–64, (*quoting* Smith v. Keller Ladder Co., 275 N.J. Super. 280, 283-84, 645 A.2d 1269 (App.Div.1994). A risk-utility analysis ordinarily involves "the consideration of other alternatives." Turchan, 316 N.J. Super at 564 (*quoting*, O'Brien, 94 N.J. at 184). However, proving a reasonably feasible alternative design is not required. Indeed, a plaintiff must prove *either* that the product's risks outweighed its utility *or* that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm. Lewis v. Am. Cyanamid Co., 155 N.J. 544, 570, 715 A.2d 967, 980 (1998) (*citing* O'Brien, *supra,* 94 N.J. at 181, 463 A.2d 298; Smith v. Keller Ladder Co., *supra,* 275 N.J.Super. at 284-85, 645 A.2d 1269) (*emphasis added*). Accordingly, Plaintiff is not required to plead that a reasonably feasible alternative design exists under the PLA.

**C. Plaintiffs Have Sufficiently Pleaded Facts To Articulate a Cause Of Action for Defective Design Under the New Jersey Products Liability Act**

Here, Plaintiffs have sufficiently pleaded facts to articulate a cause of action for design defect under the PLA. Plaintiffs alleged in their Second Amended Complaint that, "Demilec's SEALECTION SPF creates risks to the health and safety of consumers, including Plaintiffs and Class Members that are far more significant and devastating than the risks posed by other insulation products and far

outweigh the utility of SPF." (P's Second Am. Comp. ¶ 66). The Complaint also alleges that the spray polyurethane foam is supposed to become inert and non-toxic after installation, but the SPF remains toxic and "off-gasses" because either, as designed, it is impossible to become inert and non-toxic even under optimal conditions; or proper installation (and thus non-toxicity) is nearly impossible given the exacting set of installation requirements. (P's Second Am. Comp. ¶¶ 11, 18, 67, 68). The Complaint further alleges that the defective design of Demilec's SPF results in installation that causes property damage and health hazards to occupants of installed homes such that the only remedy is the complete removal of the SPF. (P's Second Am. Comp. ¶¶ 13, 74). The Complaint alleges that the health hazards Plaintiffs suffer as a result of "off-gassing" include headaches and other neurological issues, eye, nose, and throat irritations, as well as respiratory issues. (P's Second Am. Comp. ¶ 18). Further, Plaintiffs allege that SPF contains chemicals that are classified as hazardous by OSHA, such as MDI, which is a known sensitizing toxicant to humans, meaning that once a person becomes sensitized to MDI there may be no safe exposure level. (P's Second Am. Comp. ¶ 19). The Complaint also alleges that the SPF contains known carcinogens such as aldehydes, chlorinated tris, and other Volatile Organic Compounds ("VOCs"). (P's Second Am. Comp. ¶¶ 20, 72). Additionally, the Complaint alleges that while Demilec's SPF's intended purposes include creating cleaner and healthier indoor

air quality by preventing infiltration of outside dust, dirt, and germs, the SPF is actually detrimental to indoor air quality because it "off-gasses" and emits harmful toxins into consumers' homes. (P's Second Am. Comp. ¶¶ 21, 22).

All of the allegations set forth above sufficiently plead that Demilec's defective SPF does not pass scrutiny under a risk-utility test. Further, articulating that "Demilec's SEALECTION SPF creates risks to health that are far more significant and devastating than other insulation products" indicates that reasonably feasible alternative insulation products exist. (P's Second Am. Comp. ¶¶ 66). For example, classic fiberglass insulation is a reasonably feasible alternative product in that it provides the benefit of insulating consumers' homes without spraying harmful and toxic chemicals that continue to "off-gas" after installation. At the pleading stage, Plaintiffs are not required to prove each element of the risk-utility analysis, nor are Plaintiffs required to prove what particular reasonably feasible alternative exists. Rather, Plaintiffs are merely required to put the Defendants on notice of the allegations against them and sufficiently plead facts to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atlantic v. Twombly, 550 U.S. 544, 570). Clearly, Plaintiffs have met this burden here.

**D. The Nelson Case Defendant Relies on is Distinguishable**

Defendant Demilec relies on Nelson v. Biogen Idec Inc., CIV.A. 12-7317, 2013 WL 1700918 (D.N.J. Apr. 19, 2013) in support of its Motion for Judgment on the Pleadings. However, Nelson is distinguishable from the case at bar on its facts. The Nelson case involved a products liability suit regarding the pharmaceutical Tsybari, prescribed to treat MS. In contrast, the case at bar involves a consumer product, SPF, used to insulate homes. Tsyabri is a monoclonal antibody, which by definition means that there can be no alternative design, much less a reasonable one. Contrastingly, reasonably feasible alternative designs exist for foam insulation, such as old-fashioned fiberglass insulation. Additionally, a risk-utility analysis between Tsyabri and SPF is incomparable. Tsyabri is used for the treatment of a serious disease, MS, with no potential alternatives designs, while SPF is merely used to insulate homes and alternative designs for insulation exist. Accordingly, the cases are distinguishable.

**E. Should the Court Grant Defendant Demilec's Motion, Plaintiffs Request Leave to Amend its Complaint to Plead a Reasonably Feasible Alternative Design**

If the Court grants Defendant Demilec's Motion for Judgment on the Pleadings, Plaintiffs respectfully request leave to amend their Complaint to plead a reasonably feasible alternative design. Leave to amend should be freely given by the court "when justice so requires." Fed. R. Civ. P. 15(a). "The Federal Rules

reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Kiser v. General Electric Corp., 831 F.2d 423, 427 (3d Cir. 1987) (*quoting* Conley v. Gibson, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)); *See also,* Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 628 (3d Cir. 1992) ("[Fed. R. Civ. P. 15] is construed liberally in order to further a basic purpose behind the Federal Rules, that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits…"). "[I]t is not only within the power, but it is a duty, of a federal court to consider on the merits a proposed amendment of a defective allegation once the court's attention is called to the defect." Kiser, 831 F.2d at 427 (*citing* Howard v. De Cordova, 177 U.S. 609, 614, 44 L. Ed. 908, 20 S. Ct. 817 (1900)); *see also* Johnson v. New York, 315 Fed. Appx. 394, 395 (3d. Cir. 2009); Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Surety Co., 177 F.3d 210, 222 n. 13 (3d Cir. 1999). "Liberality is the keystone of Rule 15(a). Allowing amendments in order to correct deficiencies in pleadings furthers one of the basic objectives of the federal rules - the determination of cases on their merits." Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding, 245 Fed. Appx. 161, 165 (3d Cir. 2011).

"This Court has often held that, absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, *truly undue or unexplained delay*, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" Lundy v. Adamar of New Jersey, 34 F.3d 1173, 1196 (3d Cir. 1994) (*quoting* Bechtel v. Robinson, 886 F.2d 644, 652-53 (3d Cir. 1989)) (internal quotation omitted); Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981) (same), *cert. denied*, 455 U.S. 1018, 102 S. Ct. 1714, 72 L. Ed. 2d 136 (1982). "Prejudice to the non-moving party is the touchstone for the denial of the amendment . . . but the non-moving party must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" Bechtel, 866 F.2d at 652; See also, Heyl, 663 F.2d at 426.

Here, granting Plaintiffs leave to amend their Complaint would not prejudice Demilec. The case is still in discovery, depositions have not yet been conducted, and the fact discovery cutoff date is not until November 30, 2013. Thus, Demilec will not be unfairly disadvantaged or deprived of the opportunity to present facts or evidence. Similarly, granting Plaintiffs leave to amend would not cause any undue delay in the litigation. Further, Plaintiffs are not exhibiting any bad faith or

dilatory motive in seeking leave to amend their Complaint. Plaintiffs are merely responding to Demilec's Motion for Judgment on the Pleadings and are seeking to amend this purported pleading deficiency so the case may be decided on its merits.

## Conclusion

Accordingly, Defendant Demilec's Motion for Judgment on the Pleadings as to Plaintiffs' Defective Design claim should be denied. Alternatively, should the Court grant Defendant Demilec's Motion, Plaintiffs should be granted leave to amend their Complaint to plead a reasonably feasible alternative design for SPF.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Email and United States Mail on this 7th day of October, 2013 on: All counsel of record identified on the attached Service List.

Dated: October 7, 2013

Respectfully Submitted,

MORELLI ALTERS RATNER P.C.
950 Third Avenue, 11th Floor
New York, NY 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046

By: /s/ David T. Sirotkin
David T. Sirotkin
dsirotkin@morellilaw.com
D.N.J. Bar I.D.: DS4863
Benedict P. Morelli
bmorelli@morellilaw.com
N.Y. Bar No.: 1060441
David S. Ratner
dratner@morellilaw.com
N.Y. Bar No.: 1011279

AND

Jeremy W. Alters
jeremy@alterslaw.com
Florida Bar No.: 111790
Matthew T. Moore
matthew@alterslaw.com
Florida Bar No.: 70034
MORELLI ALTERS RATNER P.A.
4141 Northeast 2nd Avenue, Suite 201
Miami, Florida 33137

Telephone: (305) 571-8550
Facsimile: (305) 571-8558

AND

David C. Rash
Florida Bar No. 0977764
david@dcrashlaw.com
David C. Rash, P.A.
2200 North Commerce Parkway
Suite 200
Weston, Florida 33326
Telephone: (954) 529-2222
Facsimile: (954) 529-2224

Vincent J. Pravato
vince@wolfandpravato.com
Florida Bar No.: 83127
LAW OFFICES OF WOLF & PRAVATO
2101 West Commercial Blvd, Suite 1500
Fort Lauderdale, Florida 33309
Telephone: (954) 522-5800
Facsimile: (954) 767-0960

Attorneys for Plaintiffs

**SERVICE LIST**

DAVID AND LAUREN SCHRAEDER v. DEMILEC (USA) LLC, et. al.
CASE NO.: 2:12-cv-06074-FSH-PS
United States District Court, District of New Jersey

Jeremy W. Alters
Florida Bar No.: 111790
jeremy@alterslaw.com
Matthew T. Moore
Florida Bar No.: 70034
matthew@alterslaw.com
MORELLI ALTERS RATNER
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone: (305) 571-8550
Facsimile: (305) 571-8558

AND

David C. Rash
Florida Bar No. 0977764
david@dcrashlaw.com
David C. Rash, P.A.
2200 North Commerce Parkway
Suite 200
Weston, Florida 33326
Telephone: (954) 529-2222
Facsimile: (954) 529-2224

AND

Vincent J. Pravato
Florida Bar No.: 83127
vince@wolfandpravato.com
LAW OFFICES OF WOLF & PRAVATO
2101 West Commercial Boulevard
Suite 1500
Fort Lauderdale, Florida 33309
Telephone: (954) 522-5800
Facsimile: (954) 767-0960

Alan S. Feldman
Florida Bar No.: 797251
af@lydeckerdiaz.com
Aaron Finesilver
Florida Bar No.: 577022
asf@lydeckerdiaz.com
LYDECKER | DIAZ
1221 Brickell Avenue
19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190

Attorneys for Defendant, Demilec USA, LLC

AND

Jerald J. Howarth, Esq.
Howarth & Associates, LLC
1160 Parsippany Blvd-Suite 201
Parsippany, NJ 07054
Phone: 973-734-1900
Fax: 973-734-0406
E-mail: attorneys@hhlegal.net

Attorneys for Defendant, Energy Improvement Group, LLC, and Energy Improvement Group d/b/a FOAMPeople